IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Clarence Gibbs, #289369, | ) | C/A No.: 1:13-3382-TMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Robert M. Stevenson, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Clarence Gibbs ("Petitioner") is an inmate incarcerated at the Broad River Correctional Institution of the South Carolina Department of Corrections who filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's motion for summary judgment and return. [ECF Nos. 27, 28]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by January 15, 2015. [ECF No. 29]. Petitioner failed to file a response, and the court issued an order on January 16, 2015, directing Petitioner to advise the court whether he wished to continue with his case and to file a response to Respondent's motion by January 30, 2015. [ECF No. 32]. Petitioner filed responses on February 3 and 4, 2015. [ECF Nos. 36, 40]. Respondent filed a reply on February 18, 2015. [ECF No. 42]. The matter having been fully briefed, it is ripe for disposition. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that

Respondent's motion for summary judgment be granted.

I.    Factual and Procedural Background

The South Carolina Supreme Court summarized the facts of this case as follows:

On the evening of April 10, 2005, a robbery occurred at a grocery store in Georgetown, South Carolina. The police arrived to the scene shortly after the robber fled. Three different witnesses were interviewed about the incident. One witness, John Fowlkes, described the robber as a middle-aged or older black man with a "scruffy beard with distinct gray colorings in it." He also noted the robber wore a black hat and blue jacket. Another witness, Greg Morton, indicated the robber was wearing a black hat and a blue or black jacket. Eric Sessions, the third witness, informed police the robber was wearing a blue hat and a blue jacket. Officers also reviewed a surveillance tape that captured the robbery, and a black jacket found at Petitioner's home was positively identified by all three witnesses as the jacket worn by the robber.

Approximately ten days after the robbery, police officers presented two photographic lineups, each containing six pictures of people generally matching the description given by the witnesses, to each witness individually.[1] The first photographic lineup contained a picture of Petitioner. Upon viewing the lineups, Fowlkes and Morton identified Petitioner as the robber. Sessions, however, was unable to identify the perpetrator via the lineups.

Nearly one week later, Petitioner was transported to the police station for questioning. The three witnesses were brought to the station to view Petitioner. According to Fowlkes, he was taken to a one-way mirror to determine whether Petitioner had any involvement in the robbery. Fowlkes testified he saw a white male and Petitioner behind the glass and that he instantly recognized Petitioner as the robber. Likewise, Morton testified Petitioner was in the room with two police officers and was able to identify Petitioner as the robber. When Sessions viewed Petitioner, however, he

---

[1] At the time of trial, the second lineup had been lost. However, two police officers and two of the witnesses testified that the photographs in the second lineup were similar to the photographs contained in the first.

informed police he was sure Petitioner was *not* the perpetrator.[2]

_____

[2] All three witnesses were also permitted to hear Petitioner's voice during the show-up. Again, Fowlkes and Morton stated they recognized Petitioner's voice from the robbery, while Sessions stated it was not the robber's voice.

[ECF No. 28-14 at 2–3].

Petitioner was indicted by the Georgetown County Grand Jury during the June 2005 term of court for kidnapping (05-GS-22-601) [ECF No. 28-3 at 120–21], armed robbery (05-GS-22-602) [ECF No. 28-3 at 123–24], and possession of a weapon during the commission of a violent crime (05-GS-22-603) ("gun charge") [ECF No. 28-4 at 4–5]. Eric Fox, Esq., represented Petitioner at a jury trial on September 6–8, 2005, before the Honorable Paula H. Thomas, Circuit Court Judge. [ECF No. 28-1 at 3 *et seq.*]. The jury found Petitioner guilty as charged. [ECF No. 28-3 at 111–12]. Judge Thomas sentenced Petitioner to concurrent terms of 20 years for armed robbery and kidnapping, and 5 years consecutive for the gun charge. *Id.* at 117–18.

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). On appeal, Petitioner was represented by Kathrine H. Hudgins, Esq., Assistant Appellate Defender, with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. [ECF No. 28-5]. Attorney Hudgins filed a merits brief raising the following issues:

> 1. Did the trial court err in admitting evidence of an out of court "show-up" identification?

2.      Did the trial court err in admitting one half of the photo line-up when the other half was lost prior to the trial?

3.      Did the trial court err in failing to give an alibi charge?

[ECF No. 28-5 at 4]. On June 27, 2007, the Court of Appeals filed an unpublished decision affirming the convictions. [ECF No. 28-8]. The remittitur was issued on July 13, 2007. [ECF No. 28-9].

On October 4, 2007, Petitioner filed an application for post-conviction relief ("PCR") raising claims for ineffective assistance of counsel and due process violations. [ECF No. 28-4 at 7–13].[1] On June 13, 2008, a PCR evidentiary hearing was held before the Honorable J. Michael Baxley, Circuit Court Judge, at which Petitioner and his counsel, Vanessa Ann Richardson, appeared. *Id.* at 20–65. On July 18, 2008, Judge Baxley filed an order of dismissal. *Id.* at 68–79. Petitioner did not file an appeal.

Petitioner filed a second PCR application on April 13, 2009, alleging ineffective assistance of trial counsel and seeking a belated appeal from the July 18, 2008, order of dismissal. *Id.* at 81–87, 103–113. On July 29, 2009, a PCR evidentiary hearing was held before the Honorable Larry B. Hyman, Circuit Court Judge, at which Petitioner and his counsel, Paul Archer, Esq., appeared. *Id.* at 116–28. On August 13, 2009, Judge Hyman filed an order granting Petitioner a belated appeal from the denial of his first PCR application pursuant to *Austin v. State*, 409 S.E.2d 395 (S.C. 1991). *Id.* at 129–132.[2]

---

[1] Petitioner apparently filed another PCR application on November 8, 2007, that was identical to the PCR application filed on October 4, 2007. [ECF No. 28-4 at 18–68]. The two PCR applications were consolidated into one action. *Id.* at 68.

[2] Petitioner withdrew his remaining claims at the onset of the PCR hearing. [ECF No. 28-4 at 130].

Petitioner timely filed a notice of appeal and was again represented by Attorney Kathrine D. Hudgins, who filed a petition for writ of certiorari pursuant to *Austin v. State* in the South Carolina Supreme Court on or about April 21, 2010. [ECF No. 28-10]. Attorney Hudgins raised the following issues:

1. Did the PCR judge err in refusing to find counsel ineffective by not requesting a charge to the jury on alibi when Gibbs presented an alibi defense and the State's only evidence consisted of two out of three eye witnesses identifying Gibbs, the third eye-witness testifying that Gibbs was not the person who committed the robbery and three of the witnesses testifying that a jacket found at Gibbs house matched the jacket worn by the robber?

2. Did the PCR judge err in refusing to find counsel ineffective by not contemporaneously objecting to the introduction of the line-up, the show-up and in-court identifications?

*Id.* at 3. On May 15, 2013, the South Carolina Supreme Court issued an order affirming the denial of Petitioner's October 4, 2007, PCR application. [ECF No. 28-14]. Petitioner filed a petition for rehearing, [ECF No. 28-15], which the court denied on July 12, 2013. [ECF No. 28-16]. The remittitur was issued on July 12, 2013. [ECF No. 28-17].

Petitioner filed a third PCR application on July 27, 2010, alleging ineffective assistance of trial and PCR counsel. [ECF No. 28-18]. Petitioner's third PCR application was dismissed on June 4, 2013. [ECF No. 28-22].

Petitioner filed this petition for writ of habeas corpus on December 2, 2013. [ECF No. 1-2 at 2].[3]

---

[3] The petition was received by the court on December 3, 2013, and docketed on December 4, 2013. [ECF No. 1]. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope containing the petition reflects it was deposited in the prison mailing system on

II.    Discussion

    A.    Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following claims:

**Ground One:**    The court erred in finding counsel was not ineffective in failing to request a charge to the ju[r]y on alibi.

                <u>Supporting Facts:</u> Gibbs presented an alibi defense an[d] the court found that such a instruction should have been given. See attachment of appellate brief.

**Ground Two:**    The court erred in failing to find counsel ineffective for contemporaneously objection to the introduction of line-up, show-up in court.

                <u>Supporting Facts:</u> The court found the photo line-up was not unduly suggestive, despite the facts that half of the line-up was missing. (App. p. 113-L.9-21). The appellate brief supports Petitioner's position he[r]ein.

[ECF No. 1 at 4–6].

    B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary

---

December 2, 2013. [ECF No. 1-2 at 2].

judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266

(S.C. 2007).[4] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran,* 220 F.3d 276, 289 (4th Cir. 2000) (internal citations omitted). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy,* 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 471 S.E.2d

---

[4] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted." *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is

11

barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the state courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker,* 517 F.3d 700, 714 (4th Cir.), *cert. denied,* 555 U.S. 868 (2008). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Coleman,* 501 U.S. at 753–54. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.     Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the

13

"question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* at 102–103 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

      D.     Analysis

           1.     Merits Review

                 a)     Ground One

Petitioner argues his trial counsel was ineffective in failing to request an alibi jury charge. [ECF No. 1 at 5]. Although the trial judge did not instruct the jury on the law of alibi, the court gave the following instruction regarding identification:

> Now, at issue in this case is the identification of the Defendant as the person who committed the crimes charged. The State has the burden of proving identity beyond a reasonable doubt. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the Defendant before you may convict the Defendant. Identification testimony is an expression of belief or impression by a witness. You must determine the accuracy of the identification of the Defendant. You must consider the believability of each identification witness in the same way as you do any other witness. You may consider whether the witness had an adequate opportunity to observe the offender at the time of the offense. This will be [a]ffected by things like how long or how short a time was available, how far or how close the witness was, the lighting conditions and whether the witness had the chance to see or know the person in the past. Once again, I instruct you the burden of proof is on -- the burden of proof is on the State and extends to every element of the crime and this specifically includes the

burden of proving beyond a reasonable doubt the identity of the Defendant as the person who committed the crimes. If after examining the testimony you have a reasonable doubt as to the accuracy of the identification you must find the Defendant not guilty.

[ECF No. 28-3 at 98–99].

During the PCR hearing, Petitioner testified that his trial counsel should have objected to the trial judge's failure to give an alibi jury charge because Petitioner, his mother, and his girlfriend testified Petitioner was "some place other than the Piggly Wiggly" when it was robbed. [ECF No. 28-4 at 27]. When questioned whether he submitted an alibi jury charge, trial counsel stated that he did not, but that based on the evidence presented during the trial, an alibi charge should have been given to the jury. *Id.* at 35, 37. He stated:

> I certainly had a Charge Conference with Judge Thomas, I honestly don't recall the discussion. The alibi in preparing for [Petitioner's] case, and I think if you look at both the testimony and the arguments made at the end, my argument as well as the solicitor's, I felt the identification issues were much more in his favor.

> There was a real question in my mind - - - Number one, we had a witness who was there, Eric Sessions, who said, that's not him. They had two witnesses that it was. We had the video tape that I felt where Mr. Morton the manager - - - they were arguing he was constantly looking back and forth, he identified - - - but he was, very scared. He was getting glances at the robber. I felt the identification were much stronger and emphasize that much more, I do know that.

> I don't recall the Charge Conference and don't have specific notes about that with Judge Thomas. But we did present the witnesses, and I did argue it in my closing. So, it certainly should have been charged to the jury, I think.

*Id.* at 35–36.

The PCR court found that Petitioner's trial counsel was ineffective for failing to ensure that an alibi instruction was given to the jury. *Id.* at 76. However, the PCR court found that Petitioner had not proven that "he suffered prejudice from the lack of an alibi charge." *Id.* at 77. The PCR court noted alibi testimony was presented to the jury and both trial counsel and the solicitor discussed the alibi evidence during their closing arguments. *Id.* The PCR court observed that the trial court's jury charges sufficiently informed "the jury that the State had to prove beyond a reasonable doubt that [Petitioner] was not at home at the time of the crime, and that he was, in fact, at the scene of the crime and committed the crime." *Id.* The PCR court noted:

> because the jurors could believe *either* the State's identification witnesses, *or* they could believe the alibi witnesses, *but not both*, this court finds that the crucial issue in this case was credibility. Witness credibility was argued by both sides and was thoroughly charged to the jury.

*Id.*

In affirming the PCR court's holding finding that Petitioner was not prejudiced by counsel's failure to request an alibi jury charge, the South Carolina Supreme Court reviewed the jury charge given in Petitioner's case. [ECF No. 28-14 at 9]. The court held:

> [g]iven the clarity of the jury charge requiring the State to prove identity beyond a reasonable doubt, the PCR court's finding of no prejudice must be sustained under the any evidence standard of review.

*Id.* at 10.

In his opposition to summary judgment, Petitioner argues he was prejudiced by trial counsel's failure to request an alibi jury charge because the jurors were not given "an

16

instruction of the correct and current law on 'alibi'." [ECF No. 40 at 4].   Petitioner alleges that this resulted

> in a less than competent set of jurors undertaking fact finding upon the evidence presented at Petitioner's trial without the proper methodology of how to evaluate the alibi defense against the backdrop of all the other admitted evidence by the "beyond a reasonable doubt" standard.

*Id.* Petitioner argues that the "general jury instructions issued by the trial judge to the jury does not suffice to instruct the jurors on alibi." Petitioner further claims that the jurors did not "undertake the evaluation of Petitioner's alibi defense under the constitutionally appropriate 'beyond a reasonable doubt' standard." *Id.* at 6.

Petitioner cannot satisfy the *Strickland* test, as the court cannot find there was a substantial likelihood the result of Petitioner's trial would have been different had  the trial judge given an alibi jury instruction to the jury. The PCR court reasonably found the jury would have understood, based on the trial judge's jury charges, if the Petitioner had not been present at the Piggly Wiggly during the robbery, then he must be found not guilty.   Petitioner has failed to overcome the doubly-deferential standard of review accorded the state courts' determination of this issue of ineffective assistance of counsel under *Harrington*. Petitioner has not shown the PCR and the South Carolina Supreme courts' analysis of this issue misapplied clearly established federal law or, even if there were an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Accordingly, the undersigned recommends that Ground One be dismissed.

b)    Ground Two

Petitioner argues his trial counsel was ineffective for failing to contemporaneously object to the introduction of the line-up and show-up identifications during his trial. [ECF No. 1 at 6].

At the PCR hearing, trial counsel testified the court held a *Neil v. Biggers*[5] hearing and he challenged the introduction of the photographic lineup and show-up identifications. [ECF No. 28-4 at 31–32, 54]. Counsel stated the trial judge gave him "the opportunity to thoroughly cross examine [the state's] witnesses, and to make an argument on the law." *Id.* at 44.  Trial counsel explained the trial judge found the identifications admissible at the conclusion of the *Biggers* hearing. *Id.* at 45. Trial counsel testified he objected to the photo identification after it was introduced into evidence at trial, and stated he did not recall if he objected to the show-up and voice identifications during trial. *Id.* at 32–33.

The PCR court found Petitioner's trial counsel was ineffective for failing to make a timely and contemporaneous objection to the introduction of the line-up, show-up, and in-court identifications. *Id.* at 75. However, the PCR court found Petitioner failed to show he was prejudiced by his counsel's errors "because this Court is convinced that the trial Court's admission of the identifications would have been upheld on appeal." *Id.* The PCR court noted, although the trial court did not find the identification process suggestive, the trial court nevertheless held a *Neil v. Biggers* hearing in response to counsel's motion to

---

[5] *Neil v. Biggers*, 409 U.S. 188 (1972), sets forth factors to determine whether to exclude identification testimony from an unnecessarily suggestive identification procedure.

suppress the identifications. *Id.* at 76.  The PCR court observed during the *Biggers* hearing the trial court "reviewed all of the pertinent factors, including the opportunity to view, the degree of attention, the prior descriptions given, the level of certainty, and the length of time that had passed." *Id.*  The PCR court observed the trial court found "that due process had been satisfied and there was no substantial likelihood of misidentification." *Id.* The PCR court concluded based on the trial court's findings, there was not a reasonable probability the outcome of the trial would have been different had counsel contemporaneously objected and preserved the identification issues for appeal. *Id.*

The South Carolina Supreme Court affirmed the PCR court's ruling, finding that a contemporaneous objection would not have changed the outcome of Petitioner's appeal. [ECF No. 28-14 at 8–9].  The court explained "[t]he probative evidence in the record supports the PCR court's finding that the trial court did not abuse its discretion in admitting the evidence because the identifications were not so unduly suggestive as to create a likelihood of misidentification." *Id.* at 9.

In his opposition to summary judgment, Petitioner argues his trial counsel's failure to contemporaneously object to the introduction of the photographic, show-up, and in-court identifications deprived him of a fair trial. [ECF No. 40 at 7–9].[6] Petitioner alleges

---

[6] Petitioner also argues Respondent did not address his arguments related to the voice identification, such that summary judgment should not be granted on his voice identification claim. [ECF No. 40 at 7, 9]. The undersigned finds Respondent fully addressed Petitioner's arguments concerning his trial counsel's failure to object to the introduction of the show-up identification, which included the witnesses' identification of Petitioner's voice. [*See* ECF No. 28 at 34−38]. To the extent Petitioner complains the

the identifications were unduly suggestive, and argues neither the trial court nor the state appellate courts complied with the mandates of *Biggers* and *Strickland* "in its examinations and determinations of the admissibility of the evidence [or] the prejudicial impact of the evidence." *Id.* at 9–10.

The undersigned finds the record supports the findings of the PCR court and the South Carolina Supreme Courts that Petitioner failed to prove he was prejudiced by his trial counsel's failure to contemporaneously object to the introduction of the identification evidence. The courts' decisions were not contrary to, nor an unreasonable application of, clearly established federal law under 28 U.S.C. §2254(d)(1), nor were the decisions based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. The undersigned recommends that Ground Two be dismissed.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends the court grant Respondent's motion for summary judgment [ECF No. 27].

---

South Carolina courts did not independently evaluate and address Petitioner's out-of-court and in-court voice identifications, such an argument was not properly presented to the PCR court or the South Carolina Supreme Court during Petitioner's PCR appeal. Accordingly, this issue is not preserved for review. *See, e.g., Coleman v. Thompson*, 501 U.S. 722 (1991) (holding issue not properly raised to state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas); *Pruitt v. State*, 423 S.E.2d 127 (S.C. 1992) (holding issue must be raised to and ruled on by the PCR judge in order to be preserved for review).

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

June 18, 2015                                    Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).